Citation Nr: 1542438 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 08-02 891 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Waco, Texas


THE ISSUES

1. Whether new and material evidence to reopen a previously denied claim for service connection for hypertension, to include secondary to diabetes mellitus, has been received.

2. Entitlement to service connection for hypertension, to include secondary to diabetes mellitus and/or coronary artery disease.

3. Entitlement to an increased (compensable) evaluation for service-connected erectile dysfunction. 

4. Entitlement to an increased rating in excess of 20 percent for diabetic peripheral neuropathy of the right lower extremity. 

5. Entitlement to an increased rating in excess of 20 percent for diabetic peripheral neuropathy of the left lower extremity.

6. Entitlement to increased ratings for residuals of squamous cell carcinoma of the left vocal cord, rated as noncompensable prior to July 22, 2014, and as 10 percent disabling since July 22, 2014. 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

A.M. Ivory, Counsel


INTRODUCTION

The Veteran had honorable active duty service from September 1969 to September 1971.

This appeal to the Board of Veterans' Appeals (Board) arose from a May 2007 rating decision. In the May 2007 rating decision, the RO, in part declined to reopen the Veteran's claim for service connection for hypertension, as well as, continued the noncompensable ratings for service-connected squamous cell carcinoma of the left vocal cord and erectile dysfunction. The RO also granted the Veteran increased ratings of 20 percent for diabetic peripheral neuropathy of the left lower extremity and diabetic peripheral neuropathy of the right lower extremity, effective February 20, 2007. 

In August 2007, the Veteran filed a notice of disagreement (NOD) regarding the ratings assigned for the peripheral neuropathy of the left lower extremity, peripheral neuropathy of the right lower extremity, erectile dysfunction, and residuals of squamous cell carcinoma. 

A statement of the case (SOC) was issued in December 2007, and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in December 2007. The Veteran filed an NOD regarding the denial of his petition to reopen his previously denied claim of hypertension. An SOC was issued in March 2008 and the Veteran filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in April 2008.

As regards characterization of the appeal, the Board points that, regardless of the RO's actions, the Board has a legal duty under 38 U.S.C.A. §§ 5108, 7104 (West 2002) to address the question of whether new and material evidence has been received to reopen the claim for service connection. That matter goes to the Board's jurisdiction to reach the underlying claim and adjudicate the claim on a de novo basis. See Barnett v. Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996). Thus, the Board must first decide whether new and material evidence to reopen the claim has been received- and in view of the Board's favorable decision on the request to reopen-the Board has characterized the appeal as to hypertension as encompassing both the first and second matters set forth on the title page.

The Board notes that, while the Veteran previously was represented by a private attorney. During the pendency if the appeal, the Veteran granted a power-of-attorney in favor of Texas Veterans Commission. (See VA form 21-22, dated in July 2010). The Board recognizes the change in representation.

In June 2014, the Board remanded the claims on appeal to the Agency of Original Jurisdiction (AOJ), for further action, to include additional development of the evidence. After completing the requested development, the AOJ continued to deny the claims (as reflected in a March 2015 supplemental SOC (SSOC)) and returned these matters to the Board for further appellate consideration.

In a March 2015 rating decision the RO recharacterized the Veteran's residuals of squamous cell carcinoma of the left vocal cord to laryngitis and assigned a 10 percent rating effective July 22, 2014. Moreover, although the AOJ has granted a higher rating of 10 percent and inasmuch as higher ratings for this disability are available, both before and after July 22, 2014, and the Veteran is presumed to seek the maximum available benefit for a disability, the Board has characterized the appeal as now encompassing the two matters set forth on the title page. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

This appeal has been processed utilizing the paperless, electronic Veterans Benefit Management System (VBMS) and Virtual VA claims processing system. 

The Board's decision reopening the claim for service connection for hypertension and addressing the claim for a higher rating for residuals of squamous cell cancer of the left vocal cord is set forth below. The claim for service connection for hypertension, on the merits, along with the claims for higher ratings for peripheral neuropathy of the left lower extremity and right lower extremity, and erectile dysfunction, are being remanded to the AOJ. VA will notify the Veteran when further action, on his part, is required.


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate each matter herein decided have been accomplished.

2. In an August 2004 rating decision, the RO denied service connection for hypertension; although notified of the denial in an August 2004 letter, the Veteran did not initiate an appeal, and no pertinent exception to finality applies. 

3. New evidence added to the record since the August 2004 rating decision is not cumulative or redundant of the evidence of record at the time of the prior denial, and, as it goes to one basis for the prior denial- a nexus opinion on the etiology of the Veteran's hypertension -relates to an unestablished fact necessary to substantiate the claim, and, thus, raises a reasonable possibility of substantiating the claim. 

4. Prior to June 19, 2014, the Veteran's residuals of squamous cell carcinoma of the left vocal cord were not manifested by chronic laryngitis with hoarseness with inflammation of cords or mucous membrane.

5. Since June 19, 2014, the Veteran's residuals of squamous cell carcinoma of the left vocal cord are manifested by chronic laryngitis with hoarseness with thickening of cords or submucous infiltration.


CONCLUSIONS OF LAW

1. The August 2004 rating decision in which the RO denied service connection for hypertension is final. 38 U.S.C.A. § 7105(b) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2015).

2. As evidence pertinent to the claim for service connection for hypertension received since the RO's August 2004 denial, is new and material, the criteria for reopening the claim are met. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156 (2015). 

3. The criteria for an increased (compensable) rating for the residuals of squamous cell carcinoma of the left vocal cord, prior to June 19, 2014, are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3102, 3.159, 4.1, 4.3, 4.7, 4.97, Diagnostic Codes 6516, 6819. 

4. Resolving all reasonable doubt in the Veteran's favor, the criteria for an increased rating of 30 percent for the residuals of squamous cell carcinoma of the left vocal cord, from June 19, 2014, are met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3102, 3.159, 4.1, 4.3, 4.7, 4.97, Diagnostic Codes 6516, 6819. 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a).

Given the Board's favorable disposition of the request to reopen the claim for service connection for hypertension, all notification and development actions needed to fairly resolve this aspect of the appeal has been accomplished. 

As for the remaining claim herein decided, notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)). As delineated in Pelegrini v. Principi, 18 Vet. App. 112 (2004), after a substantially complete application for benefits is received, proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim(s); (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must ask the claimant to provide any evidence in her or his possession that pertains to the claim(s), in accordance with 38 C.F.R. § 3.159(b)(1).

The Board notes that, effective May 30, 2008, 38 C.F.R. § 3.159 has been revised, in part. See 73 Fed. Reg. 23,353-23,356 (April 30, 2008). Notably, the final rule removes the third sentence of 38 C.F.R. § 3.159(b)(1), which had stated that VA will request that a claimant provide any pertinent evidence in his or her possession.

In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (here, the RO, to include the Appeals Management Center in Washington, DC). Id.; Pelegrini, 18 Vet. App. at 112. See also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id.

In a February 2007 pre-rating letter, the AOJ provided notice to the Veteran explaining what information and evidence was needed to substantiate the claim for a higher rating, what information and evidence must be submitted by the Veteran, and what information and evidence would be obtained by VA; this letter (along with additional July 2008 letter) also provided the Veteran with general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman. 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the matters on appeal. Also of record and considered in connection with the appeal are the various written statements provided by the Veteran, and by his representative on his behalf. Pertinent medical evidence associated with the claims file consists of Social Security Administration (SSA) records, private treatment records, VA treatment records, and the reports of the April 2007 and July 2014 VA examinations. The Board finds that these VA examinations-particularly, the July 2014 examination-are adequate to evaluate the Veteran's service-connected residuals of squamous cell carcinoma of the left vocal cord, as they consisted of clinical interviews, review of the medical history, and examinations that include findings that correlate to the relevant rating criteria. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Also considered in connection with the appeal are various statements provided by the Veteran and by his representative, on his behalf. The Board finds that no additional AOJ action to further develop the record in connection with either claim, prior to appellate consideration, is required. 

The Veteran's claim was previously remanded in June 2014 for the AOJ to obtain VA treatment records, to obtain private treatment records, to obtain SSA records, to notify the Veteran that he may submit lay statements, for the Veteran to be afforded a new VA examination, and for the Veteran's claim to be readjudicated. As discussed above, the Veteran was afforded a VA examination in July 2014. In addition, as noted in the March 2015 SSOC, the Veteran's SSA records, VA treatment records, and private treatment records were obtained and considered in light of the Veteran's claim. In June 2014, the Veteran was notified that he could submit any lay statements in support of his claim. Thus, the Board finds that all of the requested development has been completed and no further action to ensure compliance with the June 2014 remand directives is required. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

In summary, the duties imposed by the VCAA have been considered and satisfied. The Veteran has been notified and made aware of the evidence needed to substantiate the claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with any claim herein decided. Consequently, any error in the sequence of events or content of the notice is not shown to prejudice the Veteran or to have any effect on the appeal. Any such error is deemed harmless and does not preclude appellate consideration of the matters herein decided at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).



II. Analysis

A. Petition to Reopen

At the time of the prior denial and currently, service connection may be granted for disability resulting from an injury or disease contracted in the line of duty, or for aggravation of a preexisting injury or disease contracted in the line of duty in the active military, naval or air service. See 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. § 3.303 (2015). 

Service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. 
§ 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

The record reflects the RO initially denied the Veteran service connection for hypertension in a July 2004 rating decision. The evidence then of record consisted of the Veteran's service treatment records, post-service VA treatment records, post-service private treatment records, and a July 2004 VA examination (none of which provide a nexus opinion of the Veteran's hypertension being either directly related to his military service or secondary to his service-connected diabetes mellitus). Also of record were written statements of the Veteran. In the July 2004 rating decision, the RO denied the claim, noting that there was no evidence that the Veteran's hypertension began in service or was manifested to a compensable degree within one year of his discharge from military service nor was there evidence that the Veteran's hypertension was due to his military service or was caused or aggravated by his service-connected diabetes mellitus. 

The Veteran then submitted additional private treatment records that pertained to his squamous cell cancer and not his hypertension; these records were also duplicative of evidence of record and they do not provide a nexus opinion of the Veteran's hypertension being either directly related to his military service or secondary to his service-connected diabetes mellitus. In August 2004, within a year of the previous rating decision, the RO continued the denial of service connection for hypertension because the evidence submitted did not pertain to the Veteran's claim for hypertension. Thus, there was no evidence that the Veteran's hypertension began in service or was manifested to a compensable degree within one year of his discharge from military service nor was there evidence that the Veteran's hypertension was due to his military service or was caused or aggravated by his service-connected diabetes mellitus. 

Although notified of the denial in the July 2004 and August 2004 letters, the Veteran did not initiate an appeal. In fact, no further communication regarding the matter of his entitlement to service connection for hypertension was received until February 2007, when VA received his application to reopen his claim. Therefore, the July 2004 and August 2004 rating decisions are final, and are not subject to revision on the same factual basis. 38 U.S.C.A. § 7105(c); 38 C.F.R. §§ 3.104, 20.302, 20.1103. Notably, no pertinent exception to finality applies to the July 2004 and August 2004 rating decisions. No new and material evidence pertinent to the matter of service connection for hypertension was received during the remainder of the appellate period following notice of the July 2004 and August 2004 denials, nor have additional service records been received at any time, requiring readjudication of the claim. See 38 C.F.R. § 3.156(b) and (c). 

Regarding petitions to reopen filed on and after August 29, 2001, 38 C.F.R. § 3.156(a) defines 'new' evidence as evidence not previously submitted to agency decision makers and 'material' evidence as evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether new and material evidence has been received, VA must initially decide whether evidence received since the prior final denial is, in fact, new. This analysis is undertaken by comparing the newly received evidence with the evidence previously of record. After evidence is determined to be new, the next question is whether it is material.

The provisions of 38 U.S.C.A. § 5108 require a review of all evidence submitted by or on behalf of a claimant since the last final denial on any basis to determine whether a claim must be reopened. See Evans v. Brown, 9 Vet. App. 273, 282-83 (1996). Furthermore, for purposes of the "new and material" analysis, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 512-13 (1992).

Here, medical evidence added to the record since August 2004 primarily consists of post-service VA and private medical records, a March 2012 VA examination, a July 2014 VA examination, and a March 2015 VA examination addendum opinion, along with additional written statements from the Veteran and his representative. 

In particular, the additionally-received medical evidence provides nexus opinions for hypertension on a secondary service connection basis. Of note, a March 2012 VA examiner opined that the Veteran's hypertension was less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran's service-connected condition. While in June 2014 a private examiner opined that the Veteran's diabetes mellitus most certainly significantly contributed to heart disease and atherosclerosis. He also stated that diabetes has its major pathologic
damage on blood vessels especially the arteries. In a July 2014 VA examination opinion it was stated that the Veteran did not have a diagnosis of hypertension within one year of discharge from active duty. It was also stated that it was less likely than not that the Veteran's hypertension was related to service or had its onset within one year of discharge from active duty. In an March 2015 VA examination addendum opinion it was stated that it was less likely than not that the Veteran's hypertension was worsened (aggravated) beyond its natural progression by the Veterans service connected diabetes mellitus, coronary artery disease, or the aggregate impact of his diabetes mellitus or coronary artery disease. 

The Board finds that the above-described evidence provides a basis for reopening the claim for service connection for hypertension. This evidence is "new" in that it was not before agency decision makers at the time of the August 2004 final denial of the claim for service connection, and is not duplicative or cumulative of evidence previously of record. Moreover, the evidence is material in that it relates to an unestablished fact needed to establish service connection for hypertension - a nexus relationship between the Veteran's military service or his service-connected disabilities. Such evidence was not of record at the time of the prior, final denial. Thus, when presumed credible, this evidence also raises a reasonable possibility of substantiating the claim. See, e.g., Shade v. Shinseki, 24 Vet. App. 110 (2010) (holding that the phrase "must raise a reasonable possibility of substantiating the claim," as it is used in 38 C.F.R. § 3.156(a), creates a standard that requires reopening "if newly submitted evidence, combined with VA assistance and considering the other evidence of record, raises a reasonable possibility of substantiating the claim."). 

Under these circumstances, the Board concludes that the criteria for reopening the claim for service connection for hypertension are met. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156. The de novo claim for service connection for hypertension is addressed in the remand, below.


B. Service-Connected Residuals Of Squamous Cell Carcinoma 
Of The Left Vocal Cord

The Veteran asserts that the residuals of his squamous cell carcinoma of the left vocal cord warrant higher ratings than the assigned noncompensable rating prior to July 22, 2014, and the assigned 10 percent rating since July 22, 2014. The May 2007 rating decision continued the Veteran's noncompensable rating while the March 2015 rating decision granted the Veteran a 10 percent disability rating effective July 22, 2014.

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3.

A veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The AOJ has already awarded staged ratings for the Veteran's service-connected residuals of squamous cell carcinoma of the left vocal cord; the Veteran has been assigned a noncompensable rating prior to July 22, 2014, and a 10 percent disability rating from July 22, 2014. Hence, the Board will consider the propriety of the rating at each stage, as well as whether any further staged rating is warranted.

Prior to July 22, 2014, the Veteran was rated as noncompensable under 38 C.F.R. § 4.97, Diagnostic Code 6819, for malignant neoplasms of any specified part of the respiratory system exclusive of skin growths. Since July 22, 2014, the Veteran is rated at 10 percent under 38 C.F.R. § 4.97, Diagnostic Code 6516, based on chronic laryngitis. 

The provisions of 38 C.F.R. § 4.97, Diagnostic Code 6819, governs malignant neoplasms of any specified part of the respiratory system. Under Diagnostic Code 6819, a 100 percent rating continues beyond the cessation of any surgical, x-ray, antineoplastic chemotherapy or other therapeutic procedure. Six months after the discontinuance of such treatment, the appropriate disability rating is determined by mandatory VA examination. If there has been no local recurrence or metastasis, the rating is based on residuals. 

The provisions of 38 C.F.R. § 4.97, Diagnostic Code 6516, governs chronic laryngitis. Under Diagnostic Code 6516, a 10 percent rating is assigned where there is evidence of hoarseness, with inflammation of cords or mucous membranes. A 30 percent rating is warranted where there is evidence of hoarseness, with thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy. 

In a January 2007 private surgical report it was noted that the Veteran had a biopsy of a right vocal cord mass. There were fragments of superficial markedly hyperkeratotic squamous epithelium with marked underlying edema. Mildly dysplastic features were present and there was no underlying connective tissue present.

In a February 2007 private treatment note his private physician stated that he saw the Veteran for the first time in August 2003 and he had hoarseness. A September 2003 biopsy revealed squamous carcinoma and he underwent radiation treatment. In June 2007 he had another biopsy because of persistent sore throat; it was determined to be chronic inflammation. In December 2006 he reported hoarseness for five weeks. In January 2007 the Veteran underwent another scope and had a biopsy of the right vocal nodule that showed mild dysplasia.

The Veteran was afforded a VA examination in April 2007. The VA examiner stated that his examination of the neck was unremarkable. On examination of the larynx there was mild edema involving both vocal cords but there was no evidence of recurrence of cancer on mirror laryngoscopy. The VA examiner spoke to the Veteran's private physician, who was also a part-time VA staff physician, and it was noted that the Veteran had leukoplakia of the right true vocal cord and that the private doctor stripped the right vocal cord of leukoplakia in January 2007. He indicated that there was no recurrence of cancer at the time of his last examination but if there was a recurrence the Veteran would require a total laryngectomy. The VA examiner stated that there was no evidence of recurrent or residual carcinoma of the larynx at this time. The Veteran indicated that several weeks earlier he had worsening of current hoarseness and his physician did additional surgery to his right vocal cord but he was unaware of what was done.

In an August 2007 private treatment note it was stated that in 2003, following surgery and radiation, the Veteran began to gradually lose his voice. Since then he has undergone additional surgeries to treat his condition and he continued to experience residual effects from this treatment with his voice being severely impaired. He experienced effort to speak at all times, i.e. with telephone usage, drive-thru windows, and conversation with unfamiliar listeners. For the majority of time at work he must use his voice and despite these significant medical problems he was able to continue working. His doctor recommended that he be supplied with a personal voice amplification system.

In a January 2008 private treatment note it was stated that the Veteran underwent a resection of a left vocal cord with post-operative radiation in 2003 and had a mass on his vocal cord removed in January 2007. The Veteran then developed significant hoarseness. It was noted that in September 2007 he was referred for voice therapy; his residuals improved but then became significantly worse.

In July 2008 the Veteran's private physician stated that the Veteran was under his care for cancer of the larynx. It was noted that the Veteran underwent an endoscopy and a biopsy and had an excision of hyperplastic nodules/polyps from the vocal cords. There was no evidence of recurrent cancer but he had recurrent benign nodules/polyps excised since his cancer treatment. As a result he had significant difficulty with his speech and he could potentially have problems with his airway. He was referred to voice therapy to assist in speech techniques that may help decrease the likelihood of recurrence of these nodules.

The Veteran underwent a private ears, nose, and throat (ENT) consult in May 2010. The ENT consult was for the purpose of evaluation prior to speech therapy. It was noted that the Veteran had a history of three cancers of the vocal cord. The Veteran was noted to have hoarseness with vocal cord edema consistent with prolonged intubation. A fiberoptic examination of the larynx revealed vocal cords that were mobile and there were no lesions. Bilateral edema of the cords and false cords were consistent with recent intubation; the Veteran was intubated in April 2010. There was no evidence of recurrence of cancer.

In a June 2014 private treatment note it was stated that the Veteran had hoarseness, postradiation scarring, and hyper function. It was also noted that he had dysphagia with thick mucus throughout the larynx.

The Veteran was afforded a VA examination in July 2014. The VA examiner stated that the Veteran's diagnosis was benign or malignant neoplasm of the sinus, nose, throat, larynx, or pharynx. The Veteran reported chronic hoarseness. Treatment for his malignant tumors was completed; he underwent excision of cancer of the left vocal cord three times in 2003 and two times in 2007. A laryngeal endoscopy revealed a combination of heavy mucus and crusting at the level of the glottis. His bilateral vocal cords were mobile but were thickened and covered with thick mucus. There was also an indication that his bilateral arytenoids were tending to collapse anteriorly/inferiorly. He had hyper movement of the bilateral false vocal cords that resulted in moderate to severe hoarseness. The VA examiner stated that there was absolutely no question that the Veteran's current hoarseness was a residual of squamous cell carcinoma of the left vocal cord.

The Board finds that at no point during the pendency of the appeal does the Veteran warrant a 100 percent rating under Diagnostic Code 6819. Under Diagnostic Code 6819, a 100 percent rating continues beyond the cessation of any surgical, x-ray, antineoplastic chemotherapy or other therapeutic procedure. Six months after the discontinuance of such treatment, the appropriate disability rating is determined by mandatory VA examination. In this case, the Veteran ceased radiation in 2003 and has been rated on the residuals since June 1, 2004. While the Veteran had a mass removed in 2007 there was no evidence of the recurrence of cancer. Therefore, a 100 percent rating under Diagnostic Code 6819 is not warranted at any point during the pendency of the appeal. 

In order for the Veteran to warrant a compensable rating under Diagnostic Code 6516 prior to June 19, 2014, the Veteran's residuals of squamous cell carcinoma of the left vocal cord must be manifested by chronic laryngitis when there is hoarseness with inflammation of cords or mucous membrane. While the Veteran's private and VA treatment records indicate that he has hoarseness, as noted in April 2007, January 2008, and May 2010 there is no evidence that it is accompanied by inflammation of cords or mucous membrane. While the April 2007 VA examiner noted that the Veteran underwent leukoplakia of the right true vocal cord in January 2007 he is service-connected for the left vocal cord not the right and there is no indication that there was any inflammation of the cords or mucous membrane. There is no discussion in the April 2007 VA examination report or the Veteran's private treatment reports of any inflammation of the cords or mucous membrane. Thus, the Board finds that the Veteran does not warrant a compensable rating prior to June 19, 2014. 

The Board also finds that prior to June 19, 2014, the Veteran does not warrant a 30 percent disability rating under Diagnostic Code 6516. There was no indication by the Veteran's biopsies that he had any pre-malignant changes. While it was noted by the Veteran's physician in July 2008 that he had recurrent, benign nodules/polyps excised there was no indication of when this occurred. There is also no evidence that prior to June 19, 2014, his hoarseness was accompanied by thickening or nodules of cords, polyps, submucous infiltration, or pre-malignant changes on biopsy; thus, the Veteran does not warrant a rating of 30 percent rating prior to June 19, 2014. 

The AOJ granted the Veteran a 10 percent disability rating under Diagnostic Code 6516 for his residuals of squamous cell carcinoma of the left vocal cord, effective July 22, 2014, the date of a VA examination that showed an increase in disability. The Board finds that the Veteran's residuals of squamous cell carcinoma of the left vocal cord warrants a 30 percent disability rating effective June 19, 2014, the date of a private treatment record that shows an increase in disability. The Veteran warrants an increased rating effective June 19, 2014, because the private medical evidence indicates that the Veteran's residuals of squamous cell carcinoma of the left vocal cord are manifested by chronic laryngitis with hoarseness with submucous infiltration. Furthermore, it was noted at the July 2014 VA examination that the Veteran had hoarseness with thickening of the cords. Therefore, the Veteran's residuals of squamous cell carcinoma of the left vocal cord warrants a 30 percent disability rating effective June 19, 2014. The Board notes that this is maximum schedular rating under Diagnostic Code 6516.

In assessing the severity of the disability under consideration, the Board has considered the lay assertions of the Veteran, which he is certainly competent to provide. See, e.g., Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, the criteria needed to support higher ratings require medical findings that are within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As such, the lay assertions are not considered more persuasive than the objective medical findings which, as indicated above, do not support assignment of a compensable rating prior to June 19, 2014, and a rating in excess of 30 percent since June 19, 2014, for the service-connected squamous cell carcinoma of the left vocal cord. 

The above determinations are based upon consideration of applicable provisions of VA's rating schedule. Additionally, the Board finds that at no point pertinent to this appeal has the disability under consideration been shown to be so exceptional or unusual to warrant the assignment of any higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extra-schedular consideration is a finding on the part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). See also 38 C.F.R. § 3.321(b)(1); VA Adjudication Procedure Manual, Pt. III, Subpart iv, Ch. 6, Sec. B(5)(c). Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disabilities with the established criteria provided in the rating schedule for the disabilities. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned ratings are therefore adequate, and no referral for extra-schedular consideration is required. See VAOGCPREC 6-96 (Aug. 16, 1996). Thun v. Peake, 22 Vet. App. 111 (2008).

If the rating schedule does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms" (including marked interference with employment and frequent periods of hospitalization). 38 C.F.R. § 3.321(b)(1). If so, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step: a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Thun, supra.

The Board finds that the applicable schedular criteria are adequate to rate the disability under consideration at all points pertinent to this appeal. As discussed above, the applicable rating criteria contemplate the manifestations and level of impairment associated with the Veteran's disability, and provides for higher ratings upon a showing of more significant impairment. Indeed, such manifestations have been considered in awarding the 30 percent rating from an earlier date, and there is no argument that the applicable schedular criteria are inadequate to rate the squamous cell carcinoma of the left vocal cord. As such, the Board finds that the rating criteria are adequate to evaluate the Veteran's disability, and the Board need not proceed to consider the second factor, viz., whether there are attendant related factors such as marked interference with employment or frequent periods of hospitalization.

The Board further notes that, pursuant to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. However, in this case, the Veteran's squamous cell carcinoma of the left vocal cord is appropriately rated as a single disability As this case does not involve evaluation of multiple disabilities, the holding in Johnson is inapposite here.

Under these circumstances, the Board concludes that the requirements for invoking the procedures set forth in 38 C.F.R. § 3.321(b)(1) are not met, and that referral of the claim for extra-schedular consideration is not warranted. See Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

Finally, the Board notes that if the claimant or the record reasonably raises the question of whether the Veteran is unemployable due to the disability for which a higher rating is sought, then part and parcel to that claim for a higher rating is the matter of whether a TDIU as a result of that disability is warranted. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Here, however, there is no evidence or allegation that the Veteran is actually or effectively rendered unemployable due to his squamous cell carcinoma of the left vocal cord. In fact, the July 2014 examiner specifically indicated that squamous cell carcinoma of the left vocal cord did not impact employment and in August 2007 it was noted that the Veteran was still working despite his limitations. Accordingly, no claim for TDIU due to the disability has been raised, and need not be addressed in conjunction with this claim.

For all the foregoing reasons, the Board finds that prior to June 19, 2014, a compensable rating for the Veteran's residuals of squamous cell carcinoma of the left vocal cord is not warranted. The Board also finds that since June 19, 2014, the Veteran's squamous cell carcinoma of the left vocal cord warrants a 30 percent disability rating. The Board has favorably applied the benefit-of-the doubt doctrine in reaching the decision to award the 30 percent rating from an earlier date, but finds that the preponderance of the evidence is against assignment of a compensable rating prior to June 19, 2014. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

As new and material evidence to reopen the claim for service connection for hypertension has been received, to this limited extent, the appeal is granted.

A compensable rating for residuals of squamous cell carcinoma of the left vocal cord, prior to June 19, 2014, is denied. 

A 30 percent rating for residuals of squamous cell carcinoma of the left vocal cord, since June 19, 2014, is granted, subject to the legal authority governing the payment of VA compensation.



REMAND

Unfortunately, the Board finds that further AOJ action on the remaining claims on appeal is warranted, even though such will, regrettably, further delay an appellate decision on these matters.

The Veteran is currently service-connected for erectile dysfunction and neuropathy of the bilateral lower extremities. In various statements, the Veteran stated that his erectile dysfunction and neuropathy of the bilateral lower extremities has increased in severity since his VA examination in March 2007. In light of these statements that his erectile dysfunction and neuropathy of the bilateral lower extremities have worsened since the last VA examinations, the Board determines that more contemporaneous medical findings are needed to fairly evaluate the Veteran's claims for increased ratings. See 38 C.F.R. § 5103A (West 2014); 38 C.F.R. § 3.159 (2015). See also Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide a veteran with a thorough and contemporaneous medical examination); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (an examination too remote for rating purposes cannot be considered contemporaneous).

On remand, the AOJ should arrange for the Veteran to undergo VA examinations by an appropriate physician. The Veteran is hereby advised that, failure to report to the scheduled examinations, without good cause, may well result in denial of the claim. See 38 C.F.R. § 3.655 (2015). Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant and death of an immediate family member. 

Prior to obtaining further VA examinations in connection with this claim, to ensure that all due process requirements are met, and the record is complete, the AOJ should undertake appropriate action to obtain and associate with the claims file all outstanding, pertinent records. 

As regards VA records, there are VA treatment records from Dallas VA Medical Center (VAMC) associated with the Veteran's claim file. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). Hence, the AOJ should obtain all outstanding records of VA evaluation and/or treatment of the Veteran, following the current procedures prescribed in 38 C.F.R. § 3.159(c) as regards requests for records from Federal facilities. 

In July 2014 the Veteran submitted an authorization form for the AOJ to obtain additional private treatment records for the Veteran's claim of entitlement to service connection for hypertension. Pertinet to his claim for entitlement to service connection for hypertension, he listed a doctor that he saw for his heart disease, atherosclerosis, and diabetes mellitus and he indicated that the private physician had over 20 years of records. That same day the Veteran submitted a statement from that physician but there are potentially outstanding treatment records since the Veteran's authorization form was for over 20 years of medical records. Thus, the AOJ should also give the Veteran another opportunity to present information and/or evidence pertinent to the claim on appeal, explaining that he has a full one-year period for response. See 38 U.S.C.A § 5103(b)(1) (West 2014); but see 38 U.S.C.A. § 5103(b)(3) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period). The AOJ should specifically request that the Veteran furnish, or furnish appropriate authorization to obtain, any outstanding, pertinent private (non-VA) records.

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2015). Include the doctors listed in the July 2014 authorization forms. 

The actions identified herein are consistent with the duties imposed by the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development or notification action deemed warranted by the VCAA prior to adjudicating the remaining claims on appeal. 

Accordingly, the remaining matters are hereby REMANDED for the following action:

1. Obtain all outstanding records of VA evaluation and/or treatment of the Veteran., Follow the procedures set forth in 38 C.F.R. § 3.159(c) with regards to requesting records from federal facilities. All records and/or responses received should be associated with the claims file.

2. Send to the Veteran a letter and his representative a request that the Veteran provide sufficient information, and if necessary, authorization to obtain any additional evidence pertinent to the claims on appeal that is not currently of record. Specifically request that the Veteran furnish, or furnish appropriate, updated authorization to obtain, any pertinent, outstanding private (non-VA) records.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period). 

3. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159, to include private records listed on the July 2014 authorization form. All records/responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran and his representative of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo VA examination, by an appropriate physician, for evaluation of his erectile dysfunction. 

The contents of the entire, electronic claims file, to include a complete copy of this REMAND, must be made available to the individual designated to examine the Veteran, and the examination report should include discussion of the Veteran's documented medical history and assertions. All necessary tests and studies should be accomplished (with all results made available to the examining physician prior to the completion of his or her report), and all clinical findings should be reported in detail.

The examiner should render specific findings as to the existence and extent or severity, as appropriate, of all current manifestations of the Veteran's erectile dysfunction. 

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. 

5. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange for the Veteran to undergo VA examination, by an appropriate physician, for evaluation of his peripheral neuropathy of the left lower extremity and his peripheral neuropathy of the right lower extremity. 

The contents of the entire, electronic claims file, to include a complete copy of this REMAND, must be made available to the individual designated to examine the Veteran, and the examination report should include discussion of the Veteran's medical history and assertions. All necessary tests and studies should be accomplished (with all findings made available to the examiner prior to the completion of his or her report), and all clinical findings responsive to the applicable criteria should be reported in detail.

The examiner must identify any nerves affected by the Veteran's peripheral neuropathy of the right lower extremity and of the left lower extremity and discuss the extent, if any, of paralysis (or disability comparable to paralysis) of the nerves involved. 

All examination findings/testing results, along with complete, clearly-stated rationale for the conclusions reached, must be provided. 

6. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. Stegall v. West, 11 Vet. App. 268 (1998). 

7. After completing the requested actions, and any additional notification and/or development action deemed warranted, readjudicate the claim on appeal in light of all pertinent evidence (to include all that added to the record since the last adjudication) and legal authority. 

8. If the benefit sought on appeal remains denied, furnish to the Veteran an appropriate SSOC that includes clear reasons and bases for all determinations, and afford them the appropriate time period for response. 

The purpose of this REMAND is to afford due process, and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefits requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs